THE PEOPLE, *ex rel.* Cyrus E. Davis, *vs.* HIRAM GARDNER.

The limitation, or prohibition, in respect to age, contained in section 13 of article 6 of the constitution, adopted in 1869, was not intended to apply, and does not apply, to justices and judges in office at the time of the adoption of the judiciary article as part of the constitution, but only to judges or justices appointed or elected under and in pursuance of the said 6th article.

The plan adopted and sought to be carried out by article 6 was to allow every judicial officer, duly elected under the constitution and laws previously existing, to take, and to retain, his office, for the full term for which he had been elected, the same as though no change had been made, in any respect.

Accordingly *held* that the limitation or prohibition in respect to age, in said section 13, did not apply to a county judge who was elected at the general election in November 1869, for the term of four years, to commence on the 1st day of January, 1870, and who, pursuant to said election, entered upon and continued to perform the duties of the office.

THIS is an action in the nature of a *quo warranto*, commenced and prosecuted pursuant to sections 428 to 448 of the Code, to oust the defendant from the office of county judge of Niagara county, and to install the relator into the office.

The action was tried by the court without a jury, (a trial by jury having been waived by consent of the respective parties,) at a circuit held before Justice MARVIN,

The People *v.* Gardner.

in Niagara county, in February, 1871; and the court having heard the proofs and allegations of the parties, respectively, found the following facts as proved:

That on November 17, 1868, the defendant was duly appointed by the Governor of this State, county judge of Niagara county, to supply a vacancy caused by the resignation of Hon. George D. Lamont, who, at the general election of 1865, was elected county judge of said county, and whose official term would not have expired until December 31, 1869.

That at the general election held in said county, in November 1869, the defendant was duly elected county judge of said county, for the term of four years, commencing on January 1, 1870. That notices of such election, and that a county judge of said county would be elected thereat, were duly and within the time prescribed by law, given and published by the proper officers, and as the law directs; and at which election the defendant received a majority of all the votes given by qualified electors for county judge at that election in said county; which votes were duly counted, estimated and canvassed, and statements thereof duly made and certified, and returned, and by the proper officers, to the county board of canvassers of said county, as prescribed by law; and said county board of canvassers at the meeting thereof, held pursuant to law on November 9, 1869, did estimate the said votes given in said county for county judge, and did make statements thereof as required by law, and which were on the same day certified and attested and filed as the law directs, and by which it appeared that the defendant was duly elected such county judge, for said term of four years, and said county board of canvassers on the same day so decided, declared and certified.

That after such election, the defendant entered upon the discharge of the duties of such judge, and took possession of said office within the time prescribed by law,

and took and subscribed the oath of office prescribed by law to be taken .by a county judge and before the proper officer, and deposited the. same in the clerk's office· of said county within the time prescribed by law; and has ever since discharged the duties of said office and yet continues to do so.

That the defendant became seventy years of age on February 9, 1870; which fact was well known to him, and also to many of his neighbors, and electors in the city of Lockport, his place of his residence.

That a general election throughout the State of New York was held on November 8, 1870, for the election of various State and county officers, to be elected at that election. That the Secretary of State gave due notice of that election, but neither he nor any other officer, either State or local, gave any notice that a county judge was to be elected in Niagara county at such election. That at said election, ballots in the form following:

" Judiciary.

For County Judge,

Cyrus E. Davis."

and one in the same form except that the name " Hiram Gardner" was thereon in place of " Cyrus E. Davis," were given and cast by electors of said county for county judge, were received by the inspectors of election, and deposited in boxes by themselves, and were correctly counted and estimated by the inspectors of election, in all the election districts where such ballots were cast, in the form prescribed by law.

That for said office of county judge of said county, the whole number of votes given by qualified electors of said county, at such election, was 2841, of which 2840 were for Cyrus E. Davis, and one for Hiram Gardner.

That Cyrus E. Davis received the greatest number of votes cast for any person for county judge at such election.

That the county board of canvassers refused to estimate

The People *v.* Gardner.

such votes, or declare or certify that said Cyrus E. Davis was elected county judge of said county.

That the said certificates of the inspectors of election, in all the election districts in said county, where any such votes were cast, were filed in the office of the clerk of said county, before the meeting of said county board of canvassers, and have remained on file there ever since; and which certificates certified that the whole number of votes so cast for county judge, in those election districts where any were cast, was 2841; of which 2840 were cast for Cyrus E. Davis, and one for Hiram Gardner.

That thereupon and within the time prescribed by law, said Cyrus E. Davis duly took and subscribed the oath of office by law prescribed to be taken by a county judge, and before the proper officer, and duly deposited the same in the office of the county clerk of Niagara county; and within the time prescribed by law, did also make and sign a certificate, stating his age and the time when his official term as such judge would expire by effluxion of a full term, and filed the same in the office of the Secretary of State.

That at and for a year prior to said election in 1870, the electors in said county were divided into two, and only two political parties, to wit, the democratic and republican parties; and a county convention was held by each of said parties to nominate county officers to be voted for at such election, the convention of the republican party being held on September 10, 1870, and that of the democratic party on October 1, 1870; at each of which, county officers to be voted for at said election were nominated; but that no candidate for county judge of said county was nominated by either of said conventions, nor by any other convention held prior to said election, nor otherwise except as herein after stated.

That for a year prior to said election, there were three and only three public newspapers published in said county,

(two of which were published daily,) and in neither of which was there any notice or information given or published that a county judge was to or would be elected or voted for at said election.

That a majority of the democratic county committee of said county (which committee was composed of sixteen members) met on Saturday, November 5, 1870, and resolved that a ticket for county judge should be issued, and that Cyrus E. Davis should be the democratic candidate; and a circular was issued on Monday, November 7, 1870, recommending to the democratic electors of said county to vote at said election for Cyrus E. Davis for county judge; and that the same was sent to the several election districts of said county with the democratic ballots for State and county officers, and to be delivered to the persons to whom such ballots were sent; said Cyrus E. Davis, being a member of said committee, and present at said meeting, and no one but members of said committee being present. That such circulars were printed in letter form, on said November 7, 1870, dated that day, and so sent inclosed, together with said ballots, in wrappers, by confidential agents, and in such form and manner that the same did not become publicly known until the morning of the day of said election, and then was known generally only to electors belonging to said democratic party, and no other publicity was given to the same; and that no other action was taken relative to an election of county judge in said county, at that election, nor any other notice thereof given, than above stated.

That the average number of votes given at said election in said county for State officers, respectively, was 9122, and the average number of votes so then given for county officers severally, other than county judge, was 9111.

And as conclusions of law from the foregoing facts, the court found and decided: that at the general election held in said county of Niagara in November, 1869, the defend-

ant was duly elected county judge of said county for the term of four years, commencing on January 1, 1870; and that he duly qualified as such judge and entered upon the duties of said office; and thereby became and was, and now is, lawfully and rightfully entitled to have and to hold said office, and to · discharge the duties, and receive and enjoy the emoluments thereof until the expiration of said term of four years; and that his said term of office has not expired; nor has the defendant become · incapable of holding said office under said election by reason of his having become seventy years of age on said February 9, 1870; and that no county judge could lawfully be elected in said county at the election so held therein, in 1870; and that Cyrus E. Davis was not elected county judge of said county, at said election, so held therein, in 1870, and is not entitled to have or hold said office or discharge the duties or receive or enjoy the emoluments thereof, for any term whatever; and judgment was directed accordingly.

The following opinion was delivered by the justice before whom the action was tried.

MARVIN, J. At the general election held in November, 1869, the electors of the State adopted a substitute for the sixth article of the constitution of 1846, to go into effect on the 1st day of January, 1870. It is known as the judiciary article.

By the 15th section it is declared that "The existing county courts are continued, and the judges thereof in office at the adoption of this article, shall hold their offices until the expiration of their respective terms. Their successors shall be chosen by the electors of the counties for the term of six years." In section 13 it is declared, "But no person shall hold the office of justice or judge of any court longer than until and including the last day of December next after he shall be seventy years of age." As this section and the previous sections relate to courts other

than county courts, and as there is nothing said in section 15 relating to county courts, touching the age of the incumbent of the office, it has been suggested that the limitation by age has no application to county judges. I think the language "justice or judge of *any court*," is too clear to justify any doubt as to intention. I think it includes county judges.

The decision in this case must depend upon the constuction to be given to the language used in the 15th section, as above quoted, in connection with the facts of the case.

There was no vital force in this article, until the 1st day of January, 1870, and article 6 of the constitution of 1846 was in full force up to the moment when it was superseded by this new judiciary article. By section 14 of article 6 of the constitution of 1846, it is declared that "there shall be elected in each of the counties of the State, except the city and county of New York, one county judge who shall hold his office for four years." It was under this provision of the constitution of 1846, and the statutes relating to the subject, that the electors of Niagara county proceeded at the general election of 1869, and elected the defendant a county judge, for four years; the term to commence on the 1st day of January following. Was the defendant "in office" within the meaning of the new judiciary article at the time it became the fundamental law? All language in constitutions, statutes and other instruments is used in reference to some subject matter, and it is always to receive a fair construction with the view of effectuating the intention of the body or person employing the language.

It was not intended by the new judiciary article to overthrow or disturb what had been lawfully done under and in pursuance of the constitution and laws previously existing. It is not doubted that the defendant was lawfully elected at the election in November, 1869, but the claim is that he

was not "in office" under that election until the new judiciary article was adopted, and that the provision relating to age is applicable to him, and that his term expired on the 31st day of December, 1870. It is suggested that the new judiciary article was "adopted" when the State canvassers had completed their canvass of the votes. Undoubtedly the electors had adopted the article. They had done all that they were authorized, by law, to do; but the article was not to become law until a future day. Until that time arrived it was silent, and affected no one. *Real* v. *The People*, (42 *N. Y.* 270,) and *Richter* v. *Poppenhausen*, (*id.* 373,) are in point. It may be conceded that the term for which the defendant was elected (four years) did not commence until January 1, 1870, and it will not necessarily follow that the defendant was not "in office," by virtue of his election, within the meaning of the new judiciary article, prior to the 1st day of January, when his term of office commenced. He was certainly elected. His election was fully accomplished when the county canvassers had completed the canvass.

He had a right, on receiving notice of his election, to take and file the oath of office. (1 *R. S. p.* 119, § 21.) He is, in the statute, styled an officer. He may take the oath of office within fifteen days after the commencement of his term of office. · *(Id.)* · Here the statute distinguishes between "the officer" and "his term of office." In short, by turning to this "article third," "of oath of office, and official bond," (1 *R. S.* 118,) it will be seen that the persons elected or appointed to any civil office or public trust embraced in the chapter, are mentioned as officers; they are referred to by the title of the office to which they have been elected or appointed, as the Governor, Chancellor, Justices of the Supreme Court, Justices of the Peace, &c. "All officers elected by the people  *  *  *  shall enter on the duties of their respective offices on the 1st day of

January, following the election at which they shall be chosen." (1 R. S. p. 116, § 3.) Here we have the time specified when the "officer elected" shall enter on the duties of his office. The person elected is, by the statute, recognized as an officer in office.

Now I have thus referred to the language used in statutes as some guide or aid in ascertaining the sense in which the words in the new judiciary article were used—the judges "in office at the adoption of this article." In my opinion the defendant was, in contemplation of the new judiciary article, in office when that article was adopted—became law. The point made by the relator is very sharp and technical, and, if it is to prevail, then the action of the electors at the election in 1869 is to be annulled. As I have already said, the electors were authorized to do all they did do; and more, it was their duty to do what they did. The constitution of 1846 was in full force, requiring them to elect a county judge for four years. They had no authority to elect for a longer term. They had authority to elect a person of any age above majority. They could have elected one whose age, at the time of the election, was more than seventy. What then? Such person, I suppose, could have taken the oath of office, but "the last day of December next after he shall be seventy years of age," would have come before the term of office would commence, and the county would be without a judge. Nothing of the kind was contemplated by the convention; but it was intended to preserve all that had been lawfully done in the way of filling the office of county judge, and the language used, "in office," was general, and fitly chosen, in view of language that had been used in the statutes, to which I have referred, and, in common parlance, to include the case when one had been lawfully and properly elected. It is not said the judges whose terms of office have commenced shall hold their offices until the expiration of their

The People *v.* Gardner.

official terms. But if we should be driven to the precise point made by the relator, how would the case then stand? It is claimed that the defendant was not in office until his term of office commenced, and that this was the first day of January, 1870, the day when the new judiciary article came into effect, containing the provision touching the age of justices and judges of any court.

Can it be asserted that there was any moment of time, when this new judiciary article was in force, that the defendant was not in office? Clearly not. The most that can be claimed is that the commencement of the term of office, and the beginning of the authority of the new constitutional article were simultaneous. It may then, I think, be safely averred that the official term of the defendant commenced at the time the constitutional provision became operative. And if it is necessary to hold that he was not in office until the term of office commenced, it may be safely held that he was in office when the new constitution came into effect. But these views or suggestions, in my own opinion, have relation to a question quite too narrow. The case has a broader base. The rights of the defendant are to be found in the constitution of 1846, as continued in the new constitutional judiciary article. It was not intended to interfere with any right acquired to the office of county judge, prior to the coming into effect of the new judiciary article, and the provisions, therefore, in section 13 of the article relating to age can have no application to this case. It can be applied only to judges or justices who are appointed or elected under and in pursuance of the new constitutional article.

There must be judgment for the defendant.

Judgment accordingly.

Judgment being entered, the plaintiffs appealed to the general term.

*Marshall B. Champlain,* (Att'y Gen.,) for the appellants.

I. The defendant was elected in November, 1869, to fill the vacancy left by Judge Lamont; which term expired on the 31st of December, 1869. Is there any provision of law under which he could have been elected for a full term? Section 8 of the general election law directs that the "vacancy" shall be supplied at the next election after the happening thereof. This was a "vacancy"—not an "expiration of term." The statute (*tit.* 6, § 34,) declares and defines what are "vacancies"—such as "death, resignation, removal," &c.

II. If the defendant was elected for a full term, then the constitutional limitation of age applies; and his term expired on the 31st day of December, 1870. (*Const. art.* 6, § 13.) 1. The limitation applies to county judges. The prohibition in section 13 means exactly what it says—that "no person shall hold the office of justice or judge of any court" beyond the time there mentioned. The language is clearly not intended to be confined to the justices and judges before mentioned. If that had been intended, it would have been expressed. If the words "of any court" had been omitted, it would have been barely possible to limit the prohibition to the justices and judges before mentioned; but with those words, it cannot be so limited. In short, it is an absolute prohibition—so clear, so plain, so positive in its terms, so significant of its intent, and so imperious in its character, that it cannot be disregarded. The object of the language employed was to make the prohibition cover the judges of every court; and such is clearly the legal effect. The reason of the prohibition applies equally in every case. The necessity, or supposed necessity, for the prohibition, applies as well to the judges of one court as to those of another. The prohibition applies to judges of any court; and necessarily, to county judges. Section 13 has also received a legislative construction, to this effect, in the act of March, 1870, requir-

The People *v.* Gardner.

ing county judges to file certificates of age. As the learned judge before whom this cause was tried, in his opinion, concedes this point, it will not be further considered.

2. But it is claimed that the defendant can hold under the following provision of section 15 of the judiciary article: "The existing county courts are continued, and the judges thereof *in office* at the *adoption* of this article, shall hold their offices until the expiration of their respective terms. Their successors shall be chosen by the electors of the counties for the term of six years." Now the article was, in point of fact, to be submitted to the people for their "adoption," or rejection, on the day of the general election in November, 1869, and it was then either adopted or rejected. It was in this sense that the term "adoption" was used in section 15; it is the literal as well as the liberal sense; the term was used with reference to its ordinary meaning and popular application. But, in the most technical sense, the article was certainly adopted when the State canvass was completed, in December, 1869. (*Real* v. *The People*, 42 *N. Y.* 270.) In any point of view, therefore, the defendant was "in office" under his appointment, and not under his election, at the "adoption" of the article. He was not "in office" under both at the same time. A person may be elected *to* office and not be *in* office. He does not go "into office" until his official term commences, and is "in office" thereafter, and not before. Where a term is four years, can one be said to be "in office" longer than the four years? An officer elect may be called an officer in the statutes, but nevertheless he is not in any sense "in office" until his term actually commences. One person may be elected *to* an office, while another, at the same time, is *holding* it, and is actually "in office." Section 15 had reference to judges holding office and "in office" at the time of its adoption. The defendant was elected at the same time the article was adopted by the votes of the people, and went "into office" at the same

time the article went into effect. Did he go "into office" and hold office under the constitution "as it was," or under the constitution "as it is?" If the defendant was elected for six years, he was still "in office" under his appointment at the adoption of the article; and as a "successor" to himself, was elected for six years under the provisions of the new article, and holding under the new article, the limitation of age necessarily applies.

If it should be held, however, that the defendant was "in office" under his election instead of his appointment, when the article was adopted, still the limitation of age applies. Nothing can be clearer than the meaning and intent of section 15. "The existing county courts" were "continued," additional jurisdiction was conferred upon them, the judges were to hold six years; but the judges in office at the adoption of the article were to hold only "until the expiration of their respective terms;" that is, the four years terms; they should not hold the six years terms; and the constitutional prohibition should apply to both the judges of four years terms and six years terms— to the judges then in office, and thereafter to be in office; the prohibition is absolute, and takes effect immediately; "but no person shall hold the office of justice or judge of any court longer than until and including the last day of December next after he shall be seventy years of age." The reason and spirit of the prohibition, as well as its express words, apply equally to judges of any term, and judges of any court. The only sound and sensible construction that can be placed upon the prohibition is simply this : the limitation of seventy years applies, without any reference to the question as to how or when the incumbent obtained the office; the prohibition is an absolute one under all circumstances, subject to no exceptions, reservations, conditions or restrictions whatever, and the constitutional limit is reached, and the "expiration of their respective terms" has been arrived at, on the 31st of De-

cember next after the incumbent has become seventy years of age. If the expression in section 15, "shall hold their offices until the expiration of their respective terms," gives the full term of four years without reference to age, then the next clause, that "their successors shall be chosen for the term of six years," would have the same effect; and together, with that interpretation, they would nullify the prohibition in section 13 entirely, as to county judges. It cannot be that such interpretation is admissible. Section 15 must be construed in connection with section 13, and both sections will then be consistent and harmonious, while full force and effect will be given to each. No plainer argument can be used than the plain text itself: "The existing county courts are continued, and the judges thereof in office at the adoption of this article, shall hold their offices until the expiration of their respective terms. But no person shall hold the office of justice or judge of any court longer than until and including the last day of December next after he shall be seventy years of age."

The learned judge before whom this case was tried, in his opinion, places his decision wholly upon the question whether the defendant was "in office" under his election at the time the judiciary article took effect, and not at the time of its "adoption," as mentioned in section 15. The question, as to either time, however, is wholly immaterial in the view of the case here presented. The learned counsel for the defense will not permit themselves to look at more than one section of the article, and that is the one under which they would continue the defendant in office. The learned judge seems to have fallen into the same error. They will not rise to the contemplation of both sections together, giving force and effect to each, consistency to both, and harmony to the whole.

The learned judge, in his opinion, says that the prohibition would annul the defendant's election. Not at all. It was competent, however, for the constitution to have

swept away both county courts and county judges; but it did not; it continued them, fixing and qualifying, however, their terms of office; and prohibiting them, in common with all other judges, from holding longer than until the close of the political year next after they should become seventy years of age. But, says the learned judge, "they could have elected one whose age at the time of the election was more than seventy; what then? * * * The county would be without a judge." The people knew when the constitution was submitted to them that it contained this prohibition. It is absurd to suppose that both parties would have attempted to elect persons who were wholly ineligible by virtue of its provisions. The Governor, however, could give the county a judge by appointment, if we must suppose such a case. The learned judge, having reference to the election of the defendant, in his opinion, further states that "It was not intended by the new judiciary article to overthrow or disturb what had been lawfully done, under and in pursuance of the constitution and laws previously existing." Now "the new judiciary article" not only "intended to," but actually did "overthrow and disturb" the late Court of Appeals, and the judges thereof "lawfully elected thereto, under and in pursuance of the constitution and laws previously existing;" other courts and judges were also "disturbed." It was absolutely intended by the new judiciary article, and such was its constitutional mission, as a part of the organic law, to change the judicial system theretofore lawfully existing, and substitute one of its own, and courts and judges were to derive their existence, and all their rights and powers, from it alone; and be subject, also, to all its provisions, restrictions and prohibitions. We have no other judicial system. One of the peculiar features of the system is that no one is permitted to hold the office of a judge of any court beyond a certain age. Whether the prohibition is wise or unwise, it is not for us to discuss; we must take

The People *v.* Gardner.

and interpret the law as we find it, and not as we would have it. It is the solemn compact of the whole people, to which all have assented, including the defendant. It is the constitution itself. Its language is so simple and well understood, so clear and certain, so plain, positive and absolute, that no court can disregard it, or turn aside that full meaning which the words themselves express.

III. The relator was regularly and legally elected. 1. If the defendant's term expired on the 31st of December, 1870, then there *was* a county judge to be elected in his place; and the people had a right to elect his "successor" at the preceding general election, to fill the office for the political year to commence on the 1st of January, 1871, and for such term as the law prescribed. This is not a case of vacancy, but an expiration of term. It is not one of the cases of vacancy mentioned in the statute, where vacancies are defined. (§ 34.) If it had been intended to be left to operate as a vacancy, the limitation of the term would have been at just seventy, whenever that might happen; but it is expressly provided that the incumbent shall hold until the last day of December next thereafter, so that the term shall regularly expire at the close of the political year, and thus enable the people to elect a "successor" at the preceding general election. The object of the statute requiring certificates of age to be filed with the Secretary of State, is for the same purpose. The exception of county judges, in the act of March, 1870, in regard to elections, only shows the looseness of legislative enactments. It is meaningless, and does no harm. It has reference to expiration of term, not only by reason of age, but by effluxion of a full term. It does not say they shall not be elected at the preceding election, but makes no provision that they shall. County judges are, therefore, left to the provisions of the previously existing election law. The same law (for it has not been repealed) under which the successors of every county judge have

heretofore been elected at the preceding general election, will warrant their election now. Section 1 of the general election law provides who shall be elected at the annual general election, and among others, county judges; and section 15 of the new judiciary article of the constitution provides and commands that "their successors shall be chosen by the electors of the counties, for the term of six years." The statute also makes provision for the holding of elections to fill the various offices of the incumbents whose terms will expire at the close of the political year. If the ground taken by the defense is correct, a county judge can never be elected except in case of a vacancy by death, resignation or removal. This is simply absurd. It would actually result in the alternate election and appointment of such officers.

2. If the defendant's term expired at the close of the political year, so that there was a county judge to be elected in his place, then the election was valid, whether any notice was given by any public officer or not. The case of the *People* v. *Cowles*, (3 *Kern.* 350,) is conclusive on this point. There is nothing in this case which takes it out of the principle on which Cowles' case was decided. Johnson, J.; there says, (p. 359,) "even where notice is prescribed, no one supposes that the omission to give it will vitiate the election." Even Wright, J., dissenting, puts it upon the ground of a sudden vacancy, and not an expiration of term with the political year; in which case, he says, the electors are presumed and bound to know the law, and when the term will expire, and act accordingly; that notice in such case is probably not necessary. Here the defendant's age was known for nearly a year previous, and discussed by both parties, and by his political friends before their convention. They took their stand upon it with full knowledge. The fact upon which depended the question of expiration of term, to wit, the defendant's age, was well known, even if the political nomination of the

The People *v.* Gardner.

relator was not; knowlege of the latter was not essential, when they already knew the former. There is no rule of ethics, much less of law, that requires one political party to inform the other of its movements; and a want of such knowledge will not vitiate an election. If the defendant and his friends committed an error in not making a nomination, when they had full and early knowledge of the fact upon which depended the question of expiration of term, it will hardly vitiate the election, either. It is believed, however, that these political considerations have nothing to do with the questions of law involved in the case, and ought not to have gone into any finding of facts; they are noticed simply because they are in.

3. "It is the election, and not the certificate of the canvassers, that gives the right to an office." (*See People* v. *Cook,* 4 *Seld.* 67, *and cases there cited.*)

As the learned judge before whom this cause was tried, makes no question as to the election of the relator, but puts his decision, in his opinion, wholly upon another ground; and, in fact, concedes the regularity of the election, the point will not be further extended.

*M. M. Southworth* and *L. F. Bowen,* for the respondent.

The case presents two principal questions: (1.) Is the defendant entitled to the office, and if not, then (2.) Is the relator entitled to it.

*First.* We claim that the defendant is clearly entitled to the office.

I. The defendant having been duly elected to the office in 1869, for the term of four years, commencing January 1, 1870, and having duly qualified, he was, in the language of section 15 of the new judiciary article, which took effect that day, "in office at the adoption of" that article, and consequently by the same section he was continued in office until the expiration of the term for which he was elected. 1. The term, "at the adoption of this

article" in that section, is most evidently used as synonymous with the terms, " now in office," and " in office when this article takes effect," used in different sections of the same article ; thus, by section 6, the Supreme Court shall consist of the justices " now in office," who shall be continued during their respective terms and their successors, &c.   By section 12 (which relates exclusively to city courts) the superior court of New York shall be composed of the six judges " in office at the adoption of this article, and their successors ;" the court of common pleas, of the judges " then in office ;" the superior court of Buffalo of the judges " now in office" and " the judges of said courts" (meaning of all the city courts) " in office at the adoption of this article," are continued until the expiration of their terms.   By section 2, of article 14 of the proposed amended constitution, it is provided that " existing officers and the terms of persons in office shall continue," &c.   In regard to continuing persons in office, no distinction was intended between the different officers referred to.   It would be absurd to conclude otherwise. These different terms used, as applied to the different officers, all refer to the time when the article took effect ; when it was adopted as operative, as an existing part of the constitution, and when that took place, the defendant was, in the language of section 15, " in office."   The defendant's term of office under his election, commenced at the same moment that the judiciary article took effect ; there was not a particle of time that the article was in force when the defendant was not in office.

2. But if the words " at the adoption," in section 15 means when the article was ratified by the election in 1869, then the " adoption" was not complete until the State canvass in December 1869, (*Real* v. *The People*, 41 *N. Y.* 270,) and the defendant's election was completed by the county canvass on November 9, 1869.   The county canvass must necessarily precede the State canvass, as the

The People *v.* Gardner.

State canvassers pass upon the returns of the county canvassers. (1 *R. S.* 436–441, *5th ed.*) When the county canvass was complete, the defendant was elected to the office ; was then in office ; was judge elect. The constitution (*art.* 12, § 1) prescribing the oath of office to be taken by all officers, treats those elected to office, as in office before they are authorized to discharge the duties thereof, and the same is the case with various statutes. 3. It appears evident from the whole article taken together, that the intention was to continue, without interruption, the courts in existence, and the judges thereof in office, when the article took effect ; that the title to and terms of the office of judges elected before the article took effect should not be disturbed or interfered with. Thus, " there shall be the existing Supreme Court," * * " and it shall be composed of the judges now in office," * * " and their successors." Section 6. The superior court, (and the other city courts,) " are continued," and are to be composed of the judges " now in office," * * " and their successors." Section 12. " The existing county courts are continued, and the judges thereof in office at the adoption of this article, shall hold," * * " and their successors shall be elected," &c. (*Sec.* 15.) · Now, if the defendant was not " in office at the adoption," &c., certainly no one else was, and consequently there can be no successor ; and as there is no provision for the election of any county judge except a successor of those in office at the adoption of the article, we never can have a county judge. At all events, we had no judge in 1870, and could have had none. No such absurdity could have been intended. 4. The defendant was not elected to fill a vacancy. County judges were always elected for a full term ; and besides, Judge Lamont's term, to fill out which the defendant was appointed by the Governor, expired December 31, 1869, and consequently the defendant was elected

for a full term of four years, commencing when Judge Lamont's term would have expired.

II. The office of county judge did not become vacant by reason of the defendant having become 70 years of age on February 9, 1870. 1. It is suggested that the disability of age, created by the last clause of section 13, does not apply to county judges. The provisions of section 13, preceding this last clause, and of the whole of section 12, referred to in section 13, relate exclusively to judges of city courts and justices of the Supreme Court; and although the language of the clause creating the disability is general, it should not be extended to include officers not previously referred to. A county court or county judge is not previously mentioned in the article. It will not be claimed that the disability applies to members of the court for the trial of impeachments, composed of the president of the senate, (Lieutenant Governor,) senators and judges of the Court of Appeals. (*Art.* 6, § 1.) And yet the members of that court are, in every sense of the word, "judges." If the clause of section 13 creating the disability is to have the broad application contended for, it will include not only the Lieutenant Governor and senators, but justices of the peace, justices of sessions, surrogates, judges of inferior courts of cities and villages, &c. The judges referred to in sections 12 and 13 are to hold office fourteen years, and county judges six years. There is, therefore, not the same reason for applying the restriction to the latter as the former.

III. But, it is insisted that this limitation of age does not apply to county judges in office when the judiciary article took effect, or was adopted. 1. The provision creating the limitation is general, while the provision as to continuing the judges in office, at the adoption of the article, is restricted in its application. If the two provisions are in conflict, then the one which is restricted in its application must prevail. The two provisions should be

read together, and when so read, their meaning will be obvious. "No person shall hold the office of justice or judge * * after he shall be 70 years of age; * * but those in office * * * shall hold until the expiration of their terms." It is a rule of universal application, that all parts of a law are to be construed together, and to receive such interpretation as to enable every clause to be operative. If the relator's construction is to be adopted, then all judges and justices in office at the time when the article took effect, and who were then over 70, were absolutely excluded; and as to them, the provision continuing them in office was absolutely nugatory, and could have no operation. (It is understood that more than one justice of the Supreme Court is in that very predicament.) Again; as before stated, on reading the whole constitution, as well as the other parts in the judiciary article, the intention, (with a few exceptions especially provided for,) to continue the existing state of things, especially with regard to officers then in office, and the terms of office of the incumbents, is perfectly obvious. That intention pervades the whole instrument, and it is a well established rule of construction that the intent of the lawgiver must always prevail over the literal sense of the terms employed. (1 *Kent's Com.* 431.) With certain exceptions above referred to, all justices and judges whose election is not provided for by the judiciary article, were to be elected as successors to those in office when it took effect, and on the expiration of their respective terms. (§§. 6, 12, 13.) The 8th section of the act of March 22, 1870, (*Sess. Laws of* 1870, *vol.* 1, *p.* 291,) is not a legislative construction of the clause of the constitution in question, favoring the relator, but the contrary; for although that section requires county judges to file certificates stating their ages, respectively, yet it is restricted to those elected thereafter; that is, after March 22, 1870, while the defendant was elected in 1869, and is thus expressly excepted from

its operation; and while all the judges of the Court of Appeals, whenever elected, are included, the inference is irresistible, that the legislature did not consider that judges previously elected came within the restriction; otherwise, they would have all judges, whenever elected, to make the certificate, as the reason for applying it in the one case, applied equally in the others. And again; section 9 of the same act provides for the election of judges and justices as successors of those whose terms expire either by "effluxion of time, or disability of age," but expressly excepts county judges; so that as to county judges, there is no provision for their election, except those statutes previously enacted.

*Second.* Should it be held that the defendant's term of office has expired, yet the relator is not entitled to the office.

I. No election of county judge could be had in 1870. 1. The defendant was duly elected under the constitution of 1846, for four years, which would not expire until December 31, 1873, and if by disability of age, his office expired on December 31, 1870, yet there was no law authorizing an election in 1870. The only law providing for filling the vacancy, is the act of May 8, 1847, (*Sess. Laws of 1847, vol.* 1, *p.* 264, § 6,) and that act provides that the vacancy "shall be supplied at the general election next succeeding the happening thereof." The defendant was rightfully in office until January 1, 1871, consequently no vacancy existed when the relator claims he was elected. 2. The expiration of the full term of an office, the death of an incumbent, his removal from the State, &c., or his removal from office for misconduct, are all matters of public notoriety, and of which the public are bound to take notice; but an individual's age is known to but few; is a matter of which the public cannot know, and is to be ascertained by proof. Suppose the defendant did not admit he was 70 in 1869, and yet a few, say half a dozen

electors, knowing or believing he was 70, vote for a successor, is it to be tolerated that a successor could be thus elected? And yet the relator must so claim.

II. The election of the relator was invalid, by reason of the total failure to publish or give notice. thereof. 1. The theory of our elective system is, that the majority of the electors shall designate, or elect the persons, or officers, who shall administer the affairs of government, such choice to be made at certain times, and in certain places convenient to the electors; and to render it absolutely certain that every elector shall know, not only the time and place, when and where the election is to be held, but the particular offices to fill which he may vote, the law requires the Secretary of State to transmit to a county officer of each county, a notice specifying, among other things, the offices to be filled at the next election, (1 *R. S.* 420, 421, §§ 1–5, *5th ed.*,) and such county officer is to have the notice published in every newspaper in his county, weekly, until the election, and to deliver copies thereof to officers of each town and city in the county. (1 *R. S.* 422, § 14, *5th ed.*) In this case there was an entire failure to give any notice. In fact, not one in ten of the electors of one political party, had the least intimation that a judge was to be, or could be, elected. To treat what was done in this case as a valid election, would be a mockery of the elective system. In *Real* v. *The People*, (*supra*,) it is held that the canvass of the votes given at an election is a part of the election; that the canvass is necessary to complete the election, and much more should the giving the notice be regarded a necessary part thereof. Is not the giving the notices a condition precedent to the election, the same as the giving of notice to the members of any official body, of a meeting of that body, is a condition precedent to such meeting? With regard to filling, by election, vacancies created otherwise than by expiration of the term of office, the statute requires them

to be filled at the next general election after the happening thereof. But with regard to electing a successor after the expiration of a full term, there is no such requisition. The only statute provision relating thereto, is a direction to the Secretary of State to transmit notices thereof to the county officers, and to those officers to publish the same, &c., (1 *R. S.* 421, § 2, *and* 422, § 14, *5th ed.*,) and the election follows pursuant to the notice. The notice is thus made the warrant for the election. If, therefore, as claimed by the relator, the defendant's constitutional term of office expired on December 31, 1870, by reason of disability of age, yet the election of the relator was invalid, for want of the notices. The notices are, however, equally necessary in cases of elections to fill vacancies. (1 *R. S.* 421, § 3, *5th ed.*) It is submitted that the case of *The People* v. *Cowles*, (13 *N. Y.* 350,) is not an authority showing that such notices are not necessary. In that case a vacancy had been created in the office of a justice of the Supreme Court by the death of the incumbent, a matter of public notoriety, and the constitution (*Const. of* 1846, *art.* 6, § 13) required that it should be filled at the next general election of judges, and the election was held under that provision which prescribed the time of the election. But, with regard to county judges, there was no such constitutional command. The only constitutional provision on that subject was the general one contained in section 5, article 10, now in force, which directs the legislature to provide for filling vacancies, and the only legislative provision is the act of 1847 above referred to.

*By the Court,* JOHNSON, J. The opinion just given in the case of *The People ex. rel. Clark* v. *Norton,*(a) covers all the points in this case, and if correct, is decisive of it; except the question of the age of the defendant. The defendant became of the age of seventy years, in February, after he

(a) Ante, p. 169.

The People *v.* Gardner.

entered upon the duties of his office, and it is insisted that he is prohibited from holding and continuing in the office after the last day of December, 1870, by the provisions of section 13 of the new judiciary article, and that the office has therefore become vacant, by virtue and force of this provision of the fundamental law.

The language of this provision is as follows: "But no person shall hold the office of justice, or judge, of any court, longer than until and including the last day of December next after he shall be seventy years of age."

This language is certainly sufficiently broad and comprehensive to produce the result contended for, and would be conclusive against the defendant, but for other provisions in the same article. By section 15 it is provided that the existing county courts shall be continued, "and the judges thereof in office at the adoption of this article shall hold their offices until the expiration of their respective terms." And by section 12, relating to the New York Common Pleas, the Superior Court of Buffalo, the City Court of Brooklyn and the Superior Court of New York, it is provided that "the judges of said courts in office at the adoption of this article are continued until the expiration of their terms." And so, also, section 6 provides that the existing Supreme Court "shall be composed of the justices now in office, who shall be continued during their respective terms." The language used in these sections is equally broad and unqualified with that used in section 13. In regard to each court therein specified, the provision is that the judge or justice in office at the adoption of that article, shall hold until the expiration of his term, without respect to age or any other circumstance or condition. The provisions of section 13 on their face appear to be incompatible with those of the other three sections referred to, and if all are to be literally interpreted, they cannot stand together, and all be carried out according to their respective terms. But there is, in truth, no

such difficulty. By applying each provision to its proper subject matter, with which it stands in connection, the whole apparent difficulty is at once solved, and each provision becomes consistent with the other, and all may stand and be carried out.

I am clearly of the opinion that the limitation or prohibition in respect to age in section 13, was not intended to apply, and does not apply, to justices and judges in office at the adoption of the judiciary article as part of the constitution. By applying the familiar principle of construction embodied in the maxim *noscitur a sociis*, by which the meaning of a word or term may be known by reference to the neighboring words, this is rendered entirely clear. A familiar instance of limiting the application of general words, upon this principle, is found in the case of *Chapman* v. *Forsyth*, (2 *How. U. S.* 202,) in giving construction to a former bankrupt act of congress. The act prohibited the discharge of bankrupts from debts created by defalcation as a public officer, executor, administrator, guardian or trustee, or " while acting in any other fiduciary capacity." It was argued that these general terms embraced all other cases of trust besides those specifically enumerated. But the court held that the classes of trusts enumerated being all special trusts, and the general words, having been used in connection with them, could not be extended so as to embrace all trusts of every grade and class, but must be confined to all other trusts belonging to the same class with those enumerated. Many other cases might be cited, of the same character, but this is sufficient to illustrate the principle.

This limits the application of the general words, " no person," in section 13, to the class of justices and judges previously enumerated in the same section. The other sections, before referred to, provide for a different class of justices and judges, who are to hold out the terms for which they were elected. But section 13 creates a new

class holding for a much longer term. After providing for the manner in which they shall be chosen, the section goes on to provide that "the official terms of the said justices and judges who shall be elected after the adoption of this article, shall be fourteen years from and including the 1st day of January next after their election." Then follows the provision in question: "But no person shall hold the office of justice or judge," &c., as before cited. This provision being associated in the same section with the provision for a new class of judges, to be elected after the adoption of the new article, with terms greatly extended, must be held to apply to that class, and no others. It is to be construed as though it had read, "no person so elected." This is plainly what was intended; and any other construction would not only defeat the intention of the framers of the instrument, and of the electors, but would abrogate other provisions in other sections, of a contrary character, equally positive and absolute in terms with the one in question. Looking carefully at all the provisions of article 6, no one, as it seems to me, can reasonably doubt that the plan adopted and sought to be carried out, was to allow every judicial officer, duly elected under the constitution and laws previously existing, to take and retain his office for the full term for which he had been elected, the same as though no change had been made in any respect. This construction renders each seemingly conflicting provision consistent with the other, and produces a congruous and harmonious whole. I am of the opinion, therefore, that the decision of the special term was right, and should be affirmed, with costs to the respondent.

TALCOTT, J., having been elected at the general election in 1869, expressed no opinion.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, May 1, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]