## STATE V. BRADFORD.

The amendment to the constitution known as "Article 27," adopted in 1898, and which provides that "the manufacture and sale of intoxicating liquors shall be under exclusive state control and shall be conducted by duly authorized agents of the state who shall be paid by salary and not by commissions," that all liquors sold shall first be examined by a state chemist, and that the legislature shall by law prescribe regulations for its enforcement and penalties for its violation, is not self-executing or prohibitory, and its adoption did not operate to repeal the existing license statutes; nor will it be effective for such purpose until it is carried into force by appropriate legislation.

(Opinion filed September 14, 1899.)

Error to circuit court, Meade county; Hon. JOSEPH B. MOORE, Judge.

Clarence L. Bradford was indicted for a violation of the liquor laws. From an order sustaining a demurrer to the indictment, the state brings error. Reversed.

*John L. Pyle*, Attorney General, and *J. F. McClung*, State's Attorney, (*Robert C. Hayes*, of counsel) for the State.

Article 27, Const., is not self-executing. Cooley, Const. Lim., 6th Ed., p. 99, *et seq.*; State v. Swan, (N. D.) 44 N. W. 492; Hayes v. Hayes, 47 Pac. 732; Willis v. St. Paul Sanitation Co., 48 Minn. 150, 16 L. R. A. 285; Morley v. Thayer, 3 Fed. 737; French v. Teschemaker, 24 Calif. 539; 6 Am. & Eng. Encyc. Law (2d Ed.) 915.

*McMahon* and *McLaughlin & McLaughlin*, for defendant in error.

Article 27, Const., is self-executing. Prohibitory Amendment Cases, 24 Kas. 700; State v. Tonks, (R. I.) 5 Atl. 636; State v. Kane, 6 Atl. 783; Chittenden v. Wurster, (N. Y.) 46

N. E. 857; People v. Draper, 15 N. Y. 544; Rathbone v. Wirth, 150 N. Y. 468; Cooley Const. Lim. (5th Ed.) 100.

CORSON, P. J.　The defendant in error was indicted by the grand jury of Meade county for violating one of the provisions of Section 12 of Chapter 72 of the Laws of 1897, entitled "An act to provide for the licensing. restriction and regulation of the business of the manufacture and sale of spirituous and intoxicating liquors." To this indictment the defendant demurred on the ground that the facts stated therein did not constitute a public offense. The demurrer was sustained, and the order sustaining the demurrer and the judgment entered thereon are now before us for review on a writ of error issued on the part of the state

The demurrer seems to have been sustained by the learned circuit court upon the theory that the adoption of the amendment to the constitution known as "Article 27" had the effect of repealing, abrogating, and annulling the provisions of said Chapter 72. That court seems to have taken the view that the provisions of that amendment are self-executing, and took effect upon its approval and ratification by the people in 1898; and this is the view urged by counsel for the defendant in error. Counsel on behalf of the state contend that the provisions of the said amendment are not self executing, and the amendment will not become effective as such until the legislature prescribes regulations for the enforcement of the same, and provides suitable and adequate penalties for its violation.

The legislature at its session in 1897 proposed, agreed to, and submitted to a vote of the people for their approval and ratification, the following amendment to the constitution:

"Section 1. The manufacture and sale of intoxicating liquors shall be under exclusive state control and shall be conducted by duly authorized agents of the state who shall be paid by salary and not by commissions. All liquors sold shall be first examined by a state chemist and the purity thereof established.

"Sec. 2. The legislature shall by law prescribe regulations for the enforcement of the provisions of this article and provide suitable and adequate penalties for the violation thereof."

At the general election in 1898 a majority of the electors voting thereon approved and ratified the amendment. The legislature at its session in 1897 enacted the license law, which was approved and took effect March 3, 1897. The legislature at its session in 1899 failed to prescribe any regulations for the enforcement of Article 27, and passed no law upon the subject, other than one submitting this question to the people: "Shall Article 27 of the constitution be repealed?" It will be observed that, while the amendment in question provides that the manufacture and sale of intoxicating liquors shall be under exclusive state control, it also provides that such manufacture and sale shall be conducted by duly-authorized agents of the state, who shall be paid by salary, and not by commissions, and that all liquors sold shall be first examined by a state chemist, and purity thereof established. It will be also observed that no provision is made for the appointment or election of such agents or of a state chemist; that no provision is made prescribing the qualifications, defining the duties, or providing compensation for such agents, that no provision is made prescribing the qualifications, defining the duties, or providing for compensation for a state chemist; and that no pro-

vision is made providing for the manufacture or purchase of the intoxicating liquors to be sold, nor any provision made for funds for carrying into effect the proposed new system. It would seem, therefore, from the provisions of that section, that it was the intention of the legislature in proposing, agreeing to, and submitting the proposed amendment, and of the voters in approving and ratifying it, to outline a plan or scheme for the control of the manufacture and sale of intoxicating liquors by the state, to be put in force by the legislature whenever it should prescribe regulations for the enforcement of the same. That such was the intention is so clearly apparent from the second section of the amendment, which provides that the legislature shall by law prescribe regulations for the enforcement of the said article, and provide suitable and adequate penalties for the violation thereof. The language, "prescribe regulations for the enforcement of the provisions" of said article, clearly contemplates that the same was to be given force and put into execution by the legislature. This construction of the amendment is clearly in harmony with the views of the text writers and the adjudicated cases. Judge Cooley, in his work on Constitutional Limitations, says: "A constitutional provision may be said to be self-executing if it supplies a sufficient rule, by means of which the right given may be enjoyed and protected. or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law. Thus, a constitution may very clearly require county and town government; but, if it fails to indicate its range and to provide proper machinery, it is not in this particular self-executing, and legislation is essen-

tial. Rights in such a case may lie dormant until statutes shall provide for them, though, in so far as any distinct provision is made, which by itself is capable of enforcement, it is law, and all supplementary legislation must be in harmony with it." Cooley, Const. Lim (5th Ed.) p. 100. The author of the article on "Constitutional Law" in 6 Am. & Eng. Enc. Law (2d Ed.) p. 915, states the rule applicable to this case as follows: "Where a constitutional provision furnishes no rule for its own enforcement, or where it expressly or impliedly requires legislative action to give effect to the purposes contemplated, it is not self-executing." State v. Swan, 1 N. D. 5, 44 N. W. 492; People v. Gardner, 59 Barb. 198; State v. Timme, 54 Wis. 318, 11 N. W. 785; *In re* State Census 6 S. D. 540; 62 N. W. 129; Williams v. Mayor, etc., 2 Mich. 560; Hays v. Hays (Idaho) 47 Pac. 732; State v. Thompson, 2 Kan. 427; McHenry v. Downer, 116 Cal. 20, 47 Pac. 779; State v. Ewing, 17 Mo. 515; *In re* State Census (Colo. Sup.) 21 Pac. 477; State v. Scott, 9 Ark. 270; *In re* House Bill (Colo. Sup.) 21 Pac. 470; Calhoon v. Com., 20 Grat. 733; Erie Co. v. City of Erie, 113 Pa. St 360, 6 Atl. 136; Indiana Co. v. Agricultural Soc. of Indiana Co., 85 Pa. St. 357; Opinion of the Justices, 3 Gray 601; Lehigh Iron Co. v. Lower Macungie Tp., 81 Pa. St. 482.

This doctrine was distinctly announced by the supreme court of the United States in Groves v. Slaughter, 15 Pet. 449. In that case Mr. Justice Thompson, in speaking for the court, says: "This obviously points to something more to be done, and looks to some future time, not only for its fulfillment, but for the means by which it was to be accomplished. * * * But there is nothing in this provision which looks like with-

drawing the whole subject from the action of the legislature.
On the contrary, there is every reason to believe, from the
mere naked prohibition, that it looked to legislative enact-
ments to carry it into full operation. And, indeed, this is in-
dispensable. There are no prohibitions or sanctions provided
in the constitution for its due and effectual operation.   *   *   *
Admitting the constitution is mandatory upon the legislature,
and that they have neglected their duty in not carrying it into
execution, it can have no effect upon the construction of this
article. Legislative provision is indispensable to carry into
effect the object of this prohibition.   *   *   *   It is unreason-
able to suppose that if this prohibition was intended, *per se*,
to operate without any legislative aid, that there would not
have been some guards and checks thrown around it to insure
its execution." The court held that, until the legislature enact-
ed the necessary laws to carry the constitutional provision into
effect, the same was not in force. The case of State v. Swan,
*supra*, is directly in point. The amendment under considera-
tion in that case provided that no person should, within that
state, manufacture or sell any intoxicating liquors, and that
the legislative assembly should by law prescribe regulations
for the enforcement of the provisions of the article, and should
provide suitable penalties for the violation thereof. The
learned supreme court of the state of North Dakota, in a
very exhaustive opinion, held that the provisions of the
license law in force when the amendment was adopted contin-
ued in force until the required regulations were prescribed by
the legislature. The opinion of the judges of the supreme
court of the state of Massachusetts, reported in 3 Gray, 601,
is also quite directly in point. It appears that prior to 1855

certain officers of the state of Massachusetts were appointed.
In that year an amendment was proposed and adopted, which
provided that such officers should thereafter be elected
by the people.   The question was thereupon submitted to the
judges as to the effect of the amendment upon the tenure of the
officers then in office, and as to the election of officers.   Their
reply contains the following:   "The present amendment con-
tains no express repeal of pre-existing provisions of the consti-
tution.   It repeals them by necessary implication, by provid-
ing another and different mode of filling these offices, but it
cannot have that effect until it comes practically into operation.
But there is another consideration, equally conclusive, to the
same result.   The present provisions of the amendment can-
not be practically carried into effect, and there can be no elec-
tion of councilors by the people, until the legislature shall
have divided the commonwealth into eight districts.   The
terms are explicit:   'The legislature, at the first session after
this amendment shall have been adopted, shall divide the com-
monwealth into eight districts.'   This action of the legislature
is therefore necessarily preliminary to any other step.   In re-
gard to the second part of the first question, our opinion is
this:   Supposing the first regular session of the legislature
to be held in January next, there can be no division of the
commonwealth into districts until a law is passed for that pur-
pose in the course of that session; and, of course, there can be
no election until November, 1856, for councilors for the year
1857.   In that case, we are of opinion that councilors for the
year 1856 may be rightfully and properly chosen by the two
houses of the legislature in the manner required by the pro-
visions of the constitution in force at the time when these

amendments were adopted.   This necessarily results from the reasons before stated.   The amendment in question contains no annullling, revoking or repealing clause whatever, and does not, in terms, annul any provision in the constitution; but it effects such repeal by superseding it, and by providing another mode of filling these offices, incompatible with such pre existing provisions.   As therefore the amendment supersedes and annuls the old provisions of the constitution, by its practical working, in filling these offices in another mode, it follows that it will have that effect when only, in the course of its own regular operation that result has been accomplished.   If, then, in the regular operation of this amendment, the legislature in 1856, being the first session after the adoption of it, shall pass a law dividing the state into districts for the election of councilors, and the first opportunity for making such election will be in November, 1856, we are of opinion that the former provisions of the constitution for the choice of councilors will remain in force, so that it will be competent for the two houses of the legislature at the organization of the government for the year 1856, to elect councilors, and during that year to fill vacancies, in the same manner and with the like effect as if this amendment had not been made."   To the same effect is the decision in State v. Timme, *supra.*   In Ewing v. Mining Co., 56 Cal.  649, the supreme court of California, in speaking of a constitutional provision, says: "As to the latter clause, it is manifest that it is not self-executing.   It does not of itself furnish a complete mode for accomplishing the object which the constitution allows to be carried out in terms by a general law to be enacted by the legislature "

We have examined the cases cited by the defendant in error in support of his contention that the constitutional amend-

ment is self-executing, but we find none that sustains such a contention. The learned counsel for the defendant in error seems to have overlooked the distinction between that class of constitutional provisions that require no further legislation to give them effect and that class of constitutional provisions which do require legislative action to give them effect; and the cases cited by him are as a general rule, cases in which the constitutional provisions are complete in themselves, and re quire no additional legislation to carry them into effect. The case of Buchanan v. Litchfield, 102 U. S. 278, clearly illustrates the class of cases cited by counsel for the defendant in error. The provision of the constitution of the state of Illinois there under consideration declared that "no county, city, township, school district or other municipal corporation shall be allowed to become indebted in any manner or for any purpose to any amount, including existing indebtedness, in the aggregate ex- ceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness." Certainly no legislation was required to carry this constitu- tional provision into effect. It contains within itself all the legislation necessary to give it full force and effect. It pro- vides the manner in which the taxable property of the county, city, etc., shall be ascertained, namely, "by the last assess- ment for state and county taxes previous to the incurring of such indebtedness," and the constitutional provision is pro- hibitory in form. And the case of Railroad v. Ihlenberg, 21 C. C. A. 546, 75 Fed 873, cited by counsel for the defendant in error, also illustrates the doctrine of the cases cited. In that case the circuit court of appeals of the Sixth circuit held the

provisions of the constitution of the state of Mississippi then under consideration were self-executing, and took effect, *per se*, without the necessity of any additional legislation.  But upon reading those provisions of the constitution, which were very full and complete in themselves, it will be observed that no legislation was necessary to carry them into effect.  The constitution itself provides for every possible contingency that might arise in carrying into effect such provisions.  That court says: ''Considering the constitutional clause in question in this light, we have no doubt that it was self-executing.  In the first place, the language of the particular clause in question is prohibitory, and is in the exact form which the legislature, were it enacting such a provision into a law, would use in a command to the courts.  Then the whole section is of that detailed character which characterizes legislation intended to operate upon the courts.  It is not one of those general provisions, directed to the legislature, which usually cover an entire subject-matter in a few words, and fix only limits of action, and vest a wide discretion as to the manner in which the mandate of the constitution shall be carried out.  * * *  Again, the final clause of the article excludes any other construction than that we have given,  It is:  'The legislature may extend the remedies herein provided for to any other class of employees.'  This certainly implies that so much of the article as precedes the clause actually provides remedies for those mentioned in it, and leaves to the legislature power to enlarge the benefits of the article by applying it to others than those named in the article.''  The learned counsel for the defendant in error seems to rely largely upon the case of Chittenden v. Wurster, 152 N. Y. 345, 46 N. E. 857; but, as we view the case, it does not sus-

tain his contention. It seems from the decision that the constitution of the state of New York contained provisions relating to the civil service in certain of the cities of that state. The legislature enacted laws for carrying those provisions into effect. Subsequently the constitution was amended, extending the civil service provisions of the constitution to counties, towns and villages. The question in that case was whether the law enacted to carry into effect the old provisions of the constitution continued in force and was applicable after the constitution was amended. A majority of the court held that the constitution, as amended, required no additional legislation for carrying it into effect, so far as the legislation then in force provided the machinery for the execution of its provisions, but the court held, "In the absence of legislation providing the machinery for conducting competitive examinations for the civil service of counties, towns, and villages, the provision of the constitution in reference to such examinations for those civil divisions of the state remains ineffectual." It will thus be seen that the court of appeals of New York recognized the fact that, when legislative action is necessary to carry into effect a constitutional provision, it remains dormant until such legislative action is had,—in other words, that the amendment remains ineffectual until the required legislation to carry it into effect is enacted. Counsel for the defendant in error insist that under the decision of Searles v. City of Lead, 10 S. D. 312, 73 N. W. 101.; this court has annunciated a doctrine which sustains the contention of the defendant in error. But there is a broad distinction between that case and the one at bar. In that case there was no question as to the time when the constitutional provision would take effect, as regulations had been provided

for carrying the same into effect, if any were in fact necessary.

It is contended on the part of counsel for the defendant in error that the amendment which we are considering is prohibitory in form, but in this we cannot agree with counsel. The language is not prohibitory, nor is it in effect prohibitory until the new policy therein provided for shall be carried into effect by supplemental legislation. It is not the object of the amendment to prohibit the sale of intoxicating liquors, but to change the system of such sales.

Our conclusion is that the amendment in question, not being self-executing, will not be in force until the legislature has enacted laws necessary to carry the proposed new system into effect, and that the license law of 1897 remains in full force and effect until such new system is put into operation by appropriate legislation. We are clearly of the opinion therefore, that the learned circuit court erred in sustaining the demurrer on the ground stated, and the judgment and order appealed from are reversed.

HANEY, J., concurs in the conclusion reached upon the constitutional question, but entertains the opinion that the indictment is insufficient under the statute.